IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

SHANTELL M. LOCKE as the Personal
Representative for the Estate of MATTIE
LOCKE, deceased                                                                                               PLAINTIFF


v.                                          Case No. 6:20-cv-06080


NATIONAL RAILROAD PASSENGER
CORPORATION d/b/a AMTRAK                                                                     DEFENDANT

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant National Railroad Passenger Corporation's Motion for Summary Judgment (ECF No. 39).  This Matter has been briefed and is ready for consideration.  (ECF Nos. 40, 41, 58, 60, and 64).

**I.      Background**

   **A.      Procedural Background**

On August 3, 2021, Plaintiff Shantell Locke ("Plaintiff"), the personal representative for the Estate of Mattie Locke ("Locke"), filed her complaint against National Railroad Passenger Corporation ("Amtrak" or "Defendant") in this Court.  (ECF No. 2).  In her complaint, Plaintiff alleged that Defendant, as a common carrier, committed nine acts of negligence, and its negligence shows an intentional disregard for public safety.  *Id.*  On September 4, 2020, Defendant filed an answer denying the allegations in Plaintiff's complaint.  (ECF No. 9).

On November 15, 2021, Defendant filed motions to disqualify the expert testimony of Ned Einstein and Dr. Jacob Keeperman.  (ECF Nos. 35 and 37).  That same day, Plaintiff filed motions to disqualify the expert testimony of Brian Heikkila and Dr. Earl Peeples.  (ECF Nos. 42 and 44).  On December 20, 2021, the Court entered an order denying the parties' motions to disqualify without prejudice.  (ECF No. 68).

1

### B.      Factual Background

On August 12, 2018, Mattie Locke was a passenger on Amtrak's Texas Eagle, which runs from Chicago to San Antonio with a stop in Arkadelphia, Arkansas. The on-board crew members consisted of Assistant Conductor Carl Williams ("A/C Williams"), Conductor Jason Hays ("Conductor Hays"), and Engineer John Langford ("Engineer Langford"). Locke was travelling from Milwaukee, Wisconsin to Arkadelphia. She sat on the upper level of one of Defendant's coach cars accompanied by Rhonda Eason ("Eason") and Mertie Mitchell ("Mitchell") who were also scheduled to detrain at Arkadelphia.

On the morning of August 12, 2018, the Defendant's train arrived at the Arkadelphia station at either 4:54:59 AM, which is the time on the event recorder or 4:58 AM, which is the time recorded on the delay report. Due to the short platform in Arkadelphia, the train was scheduled to make two stops at the train station that morning: the first for the sleeper car passengers to detrain and the second for the coach car passengers. According to Conductor Hays, the crew told the passengers on the upper level of the coach car to collect their belongings and to make their way to the lower level prior to the first stop. (Hays Dep. 71:2–9, ECF No. 58-3 at 12). About five minutes before the train reached its first stop, A/C Williams approached Locke, Eason and Mitchell to get them to prepare to make their way down to the lower level.[1] After that, the three ladies followed A/C Williams down the stairs to the lower level. However, only Eason and Mitchell made it to the lower level. As the train was coming to a stop and as A/C Williams was heading back up the stairs to ask Locke if she needed assistance, there was a "thud."[2] (Williams Dep. 39:12–19, ECF No. 41-4 at 5). A/C Williams then found that Locke had fallen head-first down the stairs leading to the lower level.

A/C Williams radioed Conductor Hays, and Conductor Hays made his way to the stairwell. Based on their observations, A/C Williams and Conductor Hays believed that Locke had a neck or spinal cord

---

[1] According to A/C Williams, he asked Locke, Eason and Mitchell if they needed assistance or help going down the stairs to the lower level, but they told him they did not. (Williams Dep. 32:10–15, ECF No. 41-4 at 3).

[2] Mitchell and Eason stated that there was a "jolt" that caused Locke to fall. (ECF Nos. 58-22 and 58-23). Eason also stated that she personally witnessed Locke's fall. (ECF No. 58-23, ¶13).

injury, so they decided not to move Locke from the position she was in.  A/C Williams said that he observed that Locke was breathing, and she had a pulse.  A/C Williams and Conductor Hays contacted Engineer Langford and an ambulance was called.

When the ambulance arrived, EMTs observed that Locke had fallen approximately eight feet and that her head was hyperextended with all of her weight pushing her into a wall.  (ECF 58-21)  They noted that the train was stopping to let her off the train station, and the crew had not moved her.  *Id.*  The crew told the EMTs that Locke was not breathing and had been in her current position for approximately fifteen minutes.  *Id.*  The EMTs moved Locke off the train and resuscitated her using CPR.  *Id.*  The ambulance transported Locke to Baptist Health Medical Center.

On August 12, 2018, Locke was transported to CHI St. Vincent Hospital in Hot Springs, Arkansas and then to UAMS in Little Rock, Arkansas.  Ultimately, Locke passed away on August 20, 2018.  Locke's death certificate lists her cause of death as acute respiratory failure due to status epilepticus from her fall on Defendant's train.  (ECF No. 41-14).

Plaintiff's complaint alleges that Locke's death was caused by Defendant failing to operate the train in a safe manner prior to this incident; failing to provide Locke a safe place to get off the train; failing to properly assist Locke in proceeding to get off the train; forcing elderly passengers, including Locke, to make their way to the exit and descend stairs before the train had come to a complete stop; failing to follow Amtrak's safety rules and practices, industry standards, and state and federal law; improperly directing Locke down the stairs while the train was still moving and could violently lurch back and forth; failing to seek medical assistance or emergency aid for Locke after the incident; failing to provide any medical assistance to Locke after the incident; and failing to properly train and instruct its crew.  (ECF No. 2, ¶30).

**II.     Standard of Review**

The standard for summary judgment is well established.  A party may seek summary judgment on a claim, a defense, or "part of [a] claim or defense." Fed. R. Civ. P. 56(a).  When a party moves for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);

*Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). This is a "threshold inquiry of . . . whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they reasonably may be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is material only when its resolution affects the outcome of the case. *Id.* at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252.

When deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the nonmoving party. *Nitsche v. CEO of Osage Valley Elec. Coop.*, 446 F.3d 841, 845 (8th Cir. 2006). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party "may not rest upon mere allegations or denials . . . but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

**III.   Discussion**

This case arises out of Plaintiff's allegations that Defendant was negligent on August 12, 2018. A prima facie case of negligence is established when the plaintiff demonstrates that the defendant breached a standard of care, that damages were sustained, and that the defendant's actions were a proximate cause of those damages. *Union Pac. R.R. Co. v. Sharp,* 330 Ark. 174, 952 S.W.2d 658 (1997). "Negligence is defined to mean the failure to do something which a reasonably careful person would do, or the doing of something which a reasonably careful person would not do, under circumstances similar to those shown by the evidence in this case." *Wallace v. Broyles*, 331 Ark. 58, 67, 961 S.W.2d 712, 715 (1998). "To constitute negligence, an act must be one from which a reasonably careful person would foresee such an appreciable risk of harm to others as to cause him not to do the act, or to do it in a more careful manner." *Id.* The defendant did not have to foresee the exact injury that occurred, but they have to reasonably foresee an appreciable risk of harm to others. *Jordan v. Adams,* 259 Ark. 407, 533 S.W.2d 210 (1976).

Defendant's motion for summary judgment contends that: Plaintiff cannot prove that Defendant proximately caused Locke to fall; Plaintiff cannot establish medical causation; Plaintiff's expert's testimony does not establish that an act or omission by Defendant caused Locke's death; Plaintiff cannot claim that that Defendant's crew were improperly trained; Defendant did not have a duty to keep Locke in her seat; and Defendant fulfilled its legal duty to Locke.

### A.   Causation

Defendant's motion for summary judgment argues that there is no admissible evidence that Defendant caused Locke's fall, that Plaintiff does not have the medical expert testimony required to establish medical causation, and that Plaintiff's expert's testimony does not establish that an act or omission by Defendant caused Locke's death. The Arkansas Supreme Court defines proximate cause "as that which in a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred." *Neal v. Sparks Reg'l Med. Ctr.*, 2012 Ark. 328, at 7–8, 422 S.W.3d 116, at 120–21 (citing *Sharp*, 330 Ark. at 181, 952 S.W.2d at 662). Although proximate causation is usually a question of fact for the jury, where reasonable minds cannot differ, it becomes a question of law for the court. *Id.* at 8, 422 S.W.3d at 121 (citing *Cragar v. Jones*, 280 Ark. 549, 660 S.W.2d 168 (1983)). "Proximate cause in a negligence action may be shown from circumstantial evidence, and such evidence is sufficient to show proximate cause if the facts proved are of such a nature and are so connected and related to each other that the conclusion therefrom may be fairly inferred." *Wallace*, 331 Ark. at 67, 961 S.W.2d at 715 (citing *White River Rural Water Dist. v. Moon,* 310 Ark. 624, 839 S.W.2d 211 (1992)).

#### i.   The Fall

As the Court understands Defendant's argument, Defendant is arguing that expert testimony is required to establish the standard of care for handling a train, therefore, Plaintiff must have an expert testify that Defendant did some act that breached the standard of care it owed to Locke and that act caused the train to jolt and thus caused Locke to fall down the stairs. Based on the arguments presented, it appears that Plaintiff is not arguing that Defendant committed some act of negligence that caused the train to "jolt".

5

Instead, Plaintiff is arguing that Defendant was negligent by instructing passengers to descend the stairs while the train was coming to a stop, not negligent train handling. (ECF No. 58 at 6).

Here, Mitchell and Eason stated that there was a "jolt" that caused Locke to fall.[3] (ECF Nos. 58-22 and 58-23). Accordingly, Plaintiff has submitted evidence showing a possible cause of Locke falling down the stairs. Therefore, reasonable minds can differ as to what actually caused Locke to fall, and this question will be submitted to a jury. However, the Defendant's motion is granted to the extent that Plaintiff's complaint alleges that Defendant negligently operated the train and caused a "jolt".

Defendant also argues that Arkansas law has long held that a common carrier is not liable for movement incident to normal operations such as starting and stopping. To support this argument, Defendant cites to *Capital Transp. Co. v. Howard*, 217 Ark. 333, 229 S.W.2d 998 (1950). In *Capital Transp. Co.*, the court found that the Plaintiff held the burden of showing, "by some substantial testimony, that her fall and consequent injuries resulted from a violent or unusual jerk, amounting to negligence on the part of [Defendant] *in operating its bus*." 217 Ark. at 337, 229 S.W.2d at 1000 (emphasis added). As previously stated, Plaintiff is not making the claim that Defendant's operation of the train negligently caused a "jolt". Therefore, this portion of Defendant's motion is denied.

    ii.    **Medical Causation**

On December 20, 2021, the Court declined to disqualify Plaintiff's medical expert Dr. John Keeperman. (ECF No. 68). Defendant argues that the Court should still find that there is no proof that any act or omission by Defendant, in the stairwell, caused Locke's death. The parties submit conflicting expert testimony on this point, so reasonable minds can differ as to what was the ultimate cause of Locke's fall and death. Therefore, this portion of Defendant's motion is denied, and this matter will be submitted to a jury.

---

[3] Defendant argues that a medical event caused Locke's fall, and it is possible that she would have fallen even if the train was completely stopped.

### B.      Duty

Defendant argues that it did not have a duty to keep Locke in her seat, that it did not have a duty to administer additional medical aid, and that it fulfilled its duty by calling 911.  Defendant also circles back to its argument that being out of her seat was not the proximate cause of Locke's fall.  As previously stated, the question of proximate cause, in this case, is for the jury to decide.  Under Arkansas law, common carriers "are under a duty to use the highest degree of care which a prudent and cautious man would exercise and which is reasonably consistent with the mode of conveyance and practical operation of the means of carriage."  *Missouri Pac. Transp. Co. v. Shepherd*, 203 Ark. 412, 157 S.W.2d. 501, 503 (1941).

Here, Locke was a passenger on Defendant's train.  Because of that, Defendant had a duty to Locke.  Under the facts and circumstances presented, whether Defendant breached that duty—by asking Locke to get out of her seat or by not providing additional, emergency medical aid after she fell—is a material question of fact for the jury to resolve.  Therefore, this portion of Defendant's motion is denied.

### C.      Federal Preemption

Defendant argues that Plaintiff has no proof of deficient training or that such deficient training was a cause of Locke's fall and death.  In addition, Defendant argues that the Courts in the Western District of Arkansas have held that Plaintiff's inadequate training claims are preempted by the Federal Railroad Safety Act ("FRSA").  49 U.S.C. § 20101.

The Court must look to the plain wording of an express preemption clause of a federal statute because it contains the best evidence of the scope of Congress' preemptive intent.  *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 664 (1993).  Courts have been faced with interpreting the preemptive force of the FRSA on numerous occasions.  "The language of the FRSA's preemption provision dictates that, to preempt state law, the federal regulation must 'cover' the same subject matter, and not merely 'touch upon' or 'relate to that subject matter.'"  *Norfolk So. Ry. Co. v. Shanklin,* 529 U.S. 344, 351 (2000).

In *Bradford v. Union Pacific R.R. Co.*, the Court found that Plaintiff's negligence claims regarding engineer training and certification were preempted.  491 F.Supp.2d 831, 835 (W.D. Ark. 2007) (citing 49 C.F.R. § 240).  The Court agrees with Defendant and finds that the decision in *Bradford* is persuasive to

7

this point. Accordingly, Defendant's motion is granted to the extent that Plaintiff's complaint alleges that Defendant's employees were inadequately trained.

### IV.     Conclusion

For the reasons stated above, the Court finds that Defendant's Motion for Summary Judgment (ECF No. 39) should be and hereby is **GRANTED IN PART AND DENIED IN PART**.

**IT IS SO ORDERED** this 22nd day of December 2021.

*/s/ Robert T. Dawson*
**ROBERT T. DAWSON**
**SENIOR U.S. DISTRICT JUDGE**